E. G. KING et al. v. FREDERICK RHEW.

*Trusts — Husband and wife — Statute of Limitations.*

1. Where land was conveyed to a trustee and his heirs for the sole and separate use of a *feme covert*, and the husband conveyed the same by a deed in which the wife's name did not appear except in the attestation clause, and no reference was made to the trustee or the equitable estate : *Held*, that although she signed the same it was not her deed, but that of the husband alone.

2. The limitation being to the trustee and his heirs to hold for the sole and separate enjoyment of the wife for life, and at her death to be equally divided between any children she might leave her surviving born of the marriage : *Held*, that it was necessary that the trustee should hold the fee until the vesting of the contingent interests, and the fee being in him it was *further held*, that his estate being barred the *cestuis que trust* were also barred.

Discussion of trust, contingent limitations and dissension by SHEPHERD J.

This was a CIVIL ACTION, tried before *Graves, J.*, at April Term, 1890, of the Superior Court of NEW HANOVER County.

The parties waived a jury trial, and agreed upon the following facts, upon which the Court rendered judgment for defendant, as set out in the record:

The following facts are admitted:

That title is out of the State, and plaintiffs claim under the deed made by Bryant Williams on the 25th day of April, 1863, to R. B. Wood, trustee. Plaintiffs next introduced a deed, signed by Isaac W. King and wife Charlotte, to Ann Eliza Orrell, made 4th August, 1869, and *mesne* conveyances from Orrell to defendant Rhew, the deed to Rhew being made to him by one Chadwick and wife on the 16th day of September, 1880. It is also admitted that Charlotte King died September 20th, 1889, and that the plaintiffs are the only children surviving said Charlotte, born of her inter-marriage with Isaac W. King, and that the rental value of the property is $2 per month.

It is admitted that the consideration of the deed to Eliza Orrell, signed by King and wife, was a tract of land conveyed to Charlotte King by deed, signed by Orrell and wife on August 4th, 1869, which land was sold and conveyed by said King and wife to one Petteway in September, 1871. This evidence is objected to by defendant, and its competency or incompetency is to be submitted to the Court and passed upon.

It is also admitted that the defendant Rhew has been in the actual and open possession of the said land since the date of deed to him, claiming adversely under said deed, and such possession was adverse to the plaintiffs, unless, in law, it was not adverse.

Upon the foregoing facts, his Honor gave judgment for the defendant, from which judgment the plaintiffs appealed.

*Mr. D. L. Russell* (by brief), for plaintiffs.
*Mr. Junius Davis*, for defendant.

SHEPHERD, J.: The land in question was conveyed on the 25th of April, 1863, to one "Robert Wood, Jr., and his heirs and assigns," in trust "for the sole and separate use, occupation and enjoyment of Charlotte King during her natural

life, and at her death to be equally divided between any children she may leave her surviving, born of her inter-marriage with her present husband, share and share alike, and to be in no wise liable to be sold or taken for the debts of her said husband." Charlotte King died in 1889, and the plaintiffs are the only children born of her intermarriage with Isaac W. King, her said husband.

The said King, in 1869, conveyed the land, for a valuable consideration, to one Ann Eliza Orrell, and the defendant claims by *mesne* conveyances from her. Charlotte King executed the deed with her husband, but her name does not appear in it anywhere except in the attestation clause, nor does the deed refer in any way to the trust estate of Wood.

It is admitted that the defendant "has been in the actual and open possession of the said land since the date (16th September, 1880) of the deed to him (by one Chadwick), claiming adversely under said deed, and (that) such possession was adverse to the plaintiffs, unless, in law, it was not adverse."

The first question to be considered is, whether the deed executed by King and wife (the trustee being no party thereto) conveyed any interest of the wife in the said land, so that the trustee would have been prevented in equity from asserting his legal title during the nine years occupancy of the defendant.

In *Bank* v. *Rice*, 4 How. U. S., 241, it was said that, "in order to convey by grant, the party possessing the right must be grantor and use apt and proper words to convey to the grantee, and merely signing, sealing and acknowledging an instrument in which another person is grantor is not sufficient. The deed in question conveyed the marital interests of the husband in these lands, and nothing more."

"In the following cases the same rule is upheld as to deeds exactly similar to the one in question, where the party signed, sealed and acknowledged it, and was only named in the

attestation clause: *Luffkin* v. *Curtis*, 13 Mass., 223; *Leavitt* v. *Lamprey*, 13 Pick., 382; *Greenough* v. *Turner*, 11 Gray, 332; *Stevens* v. *Owens*, 25 Maine, 94; *Cox* v. *Wells*, 7 Blackford (Indiana), 410; *Hall* v. *Savage*, 4 Mason, 273; *Bruce* v. *Wood*, 1 Metcalf, 542; *Pierce* v. *Chase*, 108 Mass., 258; *Purcell* v. *Goshorn*, 17 Ohio, 105; *Chapman* v. *Crooks*, 41 Mich., 597; *Wilder* v. *Van Voorhis*, 15 Gray, 148; *Harper* v. *Gilbert*, 5 Cush., 418; *Hubbard* v. *Knous*, 3 Gray, 565." See also 1 Bishop Law of Married Women, § 594, note; Malone Real Property, 528–703.

In *Gray* v. *Mathis*, 7 Jones, 502, several of the foregoing cases are cited and their doctrine clearly recognized and approved. These authorities abundantly show that Mrs. King was not a party to the deed signed by her, and that it was inefficacious to pass her estate in the said land.

Neither did her husband have any interest *jure mariti* which he could have conveyed, as the property was vested in the trustee for the "sole and separate use" of his wife. *Heathman* v. *Hall*, 3 Ired. Eq., 420; 2 Lewin Trusts, 753, 756; 2 Perry Trust, 648. Even had there been no trust, he could not, under the Act of 1848 (Rev. Code, ch. 56), have conveyed his interest, unless the wife had joined in the conveyance, and this we have seen she failed to do. The deed, then, can only be regarded as that of the husband, and as he had no interest which he could have conveyed, the trustee could have maintained an action at any time against the defendant for the possession of the property. The defendant being thus exposed to an action on the part of the trustee (*Swann* v. *Myers*, 75 N. C., 585), and having been in the continuous possession for over seven years under his deed from Chadwick (which was color of title), and it being admitted that his possession was actually adverse, it must necessarily follow that the trustee's estate is barred. It is suggested, however, though not seriously pressed, that the possession of the defendant was permissive only; but there is no evidence

of this, and we have but the naked deed of the husband and the admitted adverse possession of the defendant. Indeed, there is nothing in the case to show that Ann Eliza Orrell ever had possession of the land, nor does it appear that the defendant ever had any notice of the deed to Wood, the trustee; nor does he claim under it, nor is it part of his title. The only evidence as to the possession is the admitted fact that Rhew has had possession since 1880, claiming adversely to all persons, and even had he actual or constructive notice of the trust, the estate which he acquired by disseisin would not be subject to it, as it is well settled that " a disseisor is not an assign of the trustee, either in the *per* or *post*, for he does not claim through or under the trustee, but holds by a wrong-full title of his own, and adversely to the trust." 1 Lewin Trusts, 250; 1 Perry Trusts, 241, 346; *Benzein* v. *Lenoir*, 1 Dev. Eq., 225. This seems to be conceded by counsel. It is not insisted that the trustee would have been prevented from suing because of any equitable estoppel against Mrs. King; but we will remark, that although it had appeared that her husband had represented that the conveyance was in proper form, and she had simply remained silent while he received the purchase-money, she would not have been estopped. *Clayton* v. *Rose*, 87 N. C., 110. Neither would the consideration (other lands conveyed to her) had this effect, whatever equitable remedy, if any, Mrs. Orrell might have had as to the land conveyed by her while it remained in the hands of Mrs. King. *Scott* v. *Battle*, 85 N. C., 184; *Clayton* v. *Rose*, *supra*.

The estate of the trustee being barred, it is well settled that the *cestuis que trust* are barred also. This principle is admirably stated by SMITH, C. J., in *Clayton* v. *Cagle*, 97 N. C., 301: " The annexation of trusts to the legal estate cannot arrest the operation of the rule, which, under the circumstances, ripens an imperfect into a perfect title, since during all this period the defendant was exposed to the action of the true

owner "—that is, the trustee—" and his negligence in bringing it tolls his entry and bars his action. The interest of the *cestui que trust* is, as against strangers to the deed, under the protection of the trustee, and shares the fate that befalls the legal estate by his inaction and indifference." See also *Herndon* v. *Pratt*, 6 Jones' Eq., 327; *Wellborn* v. *Finley*, 7 Jones, 233; *Clayton* v. *Rose* and *Swann* v. *Myers, supra.*

2. It is very earnestly insisted, however, that for the purposes of the trust it was unnecessary that the trustee should have taken any greater than a life-estate, and, therefore, the remaindermen should not be barred. The principle has very generally been applied in cases of devise, where it is held that there is more room for construction to ascertain and carry into effect the intention of the testator, and accordingly the estate of the trustee has in some cases been enlarged, or restricted, to conform to the purposes of the trust. The rule, however, does not seem to be recognized in this State as applicable to limitations by *deed*. *Evans* v. *King*, 3 Jones' Eq., 387. But conceding to the fullest extent, for the purposes of the discussion, that in such cases the estate of the trustee will be "abridged or cut down" to a life-estate where the statute of uses would generally execute the ulterior limitations, or, as expressed by the counsel, where the legal estate is unnecessary to subserve the purposes of the trust, we are, nevertheless, unable to see how it can avail the plaintiffs in this action. The land was purchased from a stranger for a valuable consideration, and the plain intention of the parties was that the entire legal and beneficial interest should pass out of the grantor. Although the plaintiffs may not have been in existence at the time of the execution of the conveyance, the limitation could have been made by a deed (operating under our statute of 1715 as a common law conveyance) directly to the wife for life, the inheritance during the contingency being either, as the old writers say, in abeyance or *in nubibus* (Coke Lit., 342), or, according to Mr. Fearne (Cont.

Rem., 361), remaining in the grantor until the ascertainment of the persons who are entitled to take. Under such a conveyance, however, the wife's estate would have been subjected to the marital rights of the husband, and the contingent limitations over could have been defeated by the destruction of the life-estate. For the purpose, therefore, of securing her in the sole and separate enjoyment of her life-estate, and presumedly to more effectually preserve the particular estate until the vesting of the remainders, the entire fee was conveyed to Wood and his heirs in trust for the purposes declared. Nothing remained in the grantor, and there being a valuable consideration there could never have been a resulting trust in his favor. *Brown* v. *James*, 1 Atkins, 158; Perry on Trusts, 158. In whom, then, was it necessary for the fee to vest? It could not be in the wife, because she took but a life-estate; and it could not go to the children, even if in existence at the execution of the deed (and this does not appear), for it is well settled that if the use is contingent, the use is not in *esse* until the happening of the contingency upon which its vesting depends, and the statute will not execute it until then. Chudleigh's case, 1 Rep., 126; Sanders' Uses, 110; 1 Sugden Powers, 41; 4 Kent, 241; 1 Cruise's Digest, 354. It will be observed that the limitation over is not to the children of Mrs. King, *provided* they survive her (in which case they would have taken a vested remainder, subject to have been divested afterwards by their death before that of their mother), but it is to "any children she may leave surviving her." During her life there could be no one to fill the description, and it is therefore quite clear that the uses were contingent. The fee, then, having passed out of the grantor, the wife taking but a life-estate, and the children having but a contingent use which could not be executed by the statute, it must follow that until the death of Mrs. King it was necessary that it should have

resided in the trustee and his heirs, and this is precisely where it was placed by the express terms of the conveyance.

In support of this conclusion, in reference to the facts of this particular case, we reproduce the language of RUFFIN, C. J., in *Battle* v. *Petway*, 5 Ired., 576. He says: "If the trust is not for a particular person only but is limited over for other persons for whose protection the trustee's legal estate is necessary or highly useful, it is plain that the duty of the trustee to those entitled in future requires him to retain his estate, and, therefore, the Court would not decree him to convey it." In our case it was not only useful, but, as we have seen, it was absolutely necessary that the fee should have abided in the trustee until the happening of the contingencies mentioned. The legal *fee*, then, being in the trustee, and having been barred by his inaction, as well as that of the equitable life-tenant, there remained no estate to feed the remainders when they vested in the plaintiffs upon the death of their mother, and they are, therefore, not entitled to recover. *Herndon* v. *Pratt, supra,* and the other cases cited. The case of Herndon is strongly in point for the defendant. There, in the words of the defendant's counsel the purposes of· the trust were simply and purely to preserve the estate for the benefit of the contingent limitation to Mary Herndon and the others during the life of Robert and Julia, and according to the contention of the counsel for plaintiff it was only necessary that the trustees should take an estate for the lives of those two, and that the statute could only run against that life-estate. But the Court held that the plaintiffs were barred, and they treated the question as too clear to admit of a doubt. If there had been anything in the point now raised by the counsel for plaintiffs, it certainly would not have escaped the attention of the eminent counsel who argued the case, or of the very able lawyer and distinguished jurist who delivered the opinion. Whatever opinion may be entertained by other Courts, it is yet

too well settled in this State to admit of argument, that, where the trustee is barred, the *cestuis que trust* in remainder, as well as those for life, are barred also. *Herndon* v. *Pratt* and *Swann* v. *Myers, supra.*

Under the view we have taken of the law as settled by this Court, and its application to the present case, it is hardly necessary to review the authorities cited by the plaintiffs from other States. We will remark, however, that *Ellis* v. *Fisher*, 65 Am. Dec., 52, related to a trust created by devise, and the same is true of the quotation from *Coulton* v. *Robinson*, 57 Am. Dec., 168, cited by counsel. In *Nichol* v. *Walworth*, 4 Denio, 385. the estate of the trustee was but for life, and the decision is explained by DANFORTH, J., in *Bennett* v. *Garlock*, 79 N. Y., 302. In this latter case the doctrine as contended for by the plaintiffs was recognized as to deeds, but its application was denied because, as in the present case, it was necessary for the purposes of the trust that the trustee should take the fee. The passage cited from Perry on Trusts, 858, to the effect that the statutory bar ought not to run against the *cestuis que trust* in remainder, is not sustained in the single case (*Parker* v. *Hall*, 2 Head., 641) cited in its support. The case only decides that the *cestuis que trust* are not barred where the trustee estops himself from suing by selling the property, and thus " uniting with the purchaser in a breach of the trust." "The wrong," says the Court, "is to the *cestuis que trust* and not to the trustee," and " he could not sue or represent them." It has never been insisted that the bar is effective against the *cestui que trust* except in cases where the trustee could have sued, as in this case, and failed to do so.

For the reasons given, we are of the opinion that his Honor committed no error in holding that the plaintiffs were barred and could not recover.

Affirmed.