### DEANS v. GAY.

(Filed March 24, 1903.)

1. WILLS—*Construction—Trusts—Estates.*

Where a testatrix devises land to her daughter and her heirs forever, and in a subsequent clause provides that such land be kept for her daughter and her children forever, the daughter takes the legal title impressed with a trust for the children and may pass such naked legal title by deed.

2. LIMITATIONS OF ACTIONS—*Mortgages—Trusts—Adverse Possession.*

Where a trustee, holding a legal title to land for the use of herself and others, executes a mortgage on the same, and the land is sold under the mortgage the purchaser gets the legal title coupled with the trust, his possession is not adverse to the *cestuis que trustent*, and the statute of limitations does not run against them.

ACTION by S. Madora Deans and others against Albert Gay, heard by Judge *Francis D. Winston* and a jury, at No-

vember Term, 1902, of the Superior Court of NASH County.

From a judgment for the defendant, the plaintiffs appealed.

*T. W. Bickett,* for the plaintiffs.
*Jacob Battle,* and *F. S. Spruill,* for the defendant.

CONNOR, J.   William Jane Bryant died on the 2nd day of September, 1872, having first made her last will and testament, the second item whereof is in the following words: "I will and desire that my daughter Madora Deans have fifty acres of land allotted to her . . . . . to her and her heirs forever."   Item 10 of said will is in the following words: "I will and desire that the fifty acres of land given to my daughter Madora Deans be kept for the benefit of her and her children forever."   The said Madora was born in 1850, married in 1872 and became discovert in 1889 by the death of her husband.   At the time of her mother's death she had one child which afterwards died.   The case does not disclose at what time the child died.   We assume in the absence of any statement to the contrary that the child died intestate and without issue.   There was born of said marriage and are now living, the plaintiffs, George C. Deans, aged 28 years, R. E. Deans, aged 26 years, J. H. Deans, aged 24 years, W. O. Deans, aged 19 years, Mary Deans, aged 17 years, Ellen Deans, aged 16 years and Hattie Deans, aged 15 years.

The plaintiff Madora joined her husband in the execution of a mortgage deed conveying the said land to John D. Wells and another, dated 9th March, 1874, and duly recorded.   On the 17th July, 1875, the said mortgagees conveyed and transferred to Albert Gay "all their right, title and interest in and to" the land conveyed to them as aforesaid, together with the indebtedness secured therein.   On the 15th day of September, 1875, the said Albert Gay, by virtue of the pow-

er of sale contained in said mortgage, sold and conveyed the said land to Wilson Gay, Jr., by deed duly recorded. On November 12, 1875, the said Wilson Gay, Jr., sold and conveyed the said land to the defendant, Albert Gay by deed duly recorded. The defendant entered into the possession of said land upon the execution of said deed and has remained in possession thereof until the commencement of this action receiving the rents and profits thereof. His Honor directed the jury to answer the issue in regard to the ownership of the plaintiffs in the negative and rendered judgment accordingly from which the plaintiff appealed.

The defendant's counsel in his brief insists that there being an absolute gift of the land to the daughter Madora in the second item of the will, followed by eight clauses having no connection with this land or the daughter, the language used in the tenth item is not sufficient to impress upon her title any limitation or trust. The words are "I will and desire." If used immediately after and in connection with the second item in which the devise is made, it would seem that there would be no doubt of their effect upon the title. We think that this is not changed by the fact that they are found in the tenth item. It is a well established rule in the construction of wills that the last clause is given effect, if there be any conflict with other clauses and that the testator's intention is to be arrived at by reading the whole will in the light of surrounding circumstances. *Holt v. Holt,* 114 N. C., 241. We think that the proper construction of the two clauses, read together, is that the testator's purpose was to give the land to her daughter, who had but lately married, and to impress upon the legal title a trust that it "be kept" for the "benefit" of her and her children. This language is very much like that used by the testator in *Crudup v. Holding,* 118 N. C., 222. There the trust was to "keep and hold together". We can see substantial difference in the language used in the two

wills. To keep is 'to retain in one's power or possession', as "If we lose the field," "We can not keep the town". The purpose of keeping is for the "benefit"—that is the "use," enjoyment, support of "her and her children." We have examined with care the argument of defendant's counsel in which he seeks to distinguish the language in the will before us and that in *Crudup v. Holding, supra.* We cannot concur with him but think that the construction adopted in that case should be followed by us. We are therefore of the opinion that Madora held the legal title in fee for the use of herself and her children, including all of the children born to her. It is clear that such was the intention of the testator and there is no reason or principle of law forbidding such intention being effectuated. *Scull v. Ins. Co.,* at this term. To hold otherwise would fail entirely to give effect to her purpose to provide for her daughter and her children.

It was held in *Crudup v. Holding, supra,* that a deed executed by Mrs. Crudup and her children conveyed no title, "as that would at once defeat the intention of the testator." The defendants counsel insist that if this be the conclusion, the plaintiffs are barred of their action by the Statute of Limitations. Madora Deans became a *feme sole* in 1889. The defendant Gay has been in possession of the land since 1875. The summons was issued in 1901. If the principle announced in *King v. Rhew,* 108 N. C., 696, 23 Am. St. Rep., 76, applies it would seem that the plaintiff's are barred. It was held in that case, as we hold in this, that for the purpose of executing the trust the legal title remains in the trustee. There the trustee held for the benefit of Charlotte King during her life and at her death for her children. Charlotte King undertook to execute a deed but it was invalid and conveyed no estate or interest. The grantee named in the invalid deed and those claiming under him went into and remained in possession of the land until the

bringing of the action. The trustee made no deed or did any act affecting his rights. He could have maintained an action at any time against the defendant for the possession of the land. Shepherd, J., in that case says, "The defendant being thus exposed to an action on the part of the trustee and having been in the continuous possession for over seven years under his deed from Chadwick (which was color of title) and it being admitted that his possession was actually adverse it must necessarily follow that the trustee's estate is barred."

In *Clayton v. Cagle,* 97 N. C., 300, Moore, the president of a corporation in 1851 executed to Williamson a deed in trust for certain purposes therein set out, the plaintiff being one of the beneficiaries. The defendant went into possession in 1863 *under an independent* title and remained therein for more than seven years. The court held that the trustee was barred. Smith, C. J., says, "The interest of the *cestui que trust* is, as against *strangers to this deed,* under the protection of the trustee and shares the fate that befalls the legal estate by his inaction or indifference." In the case before us the trustee executes a mortgage with her husband to Wells and another. The mortgagees convey the land, (not assign the mortgage) to Gay and he sells under the power to Wilson Gay, Jr., who re-conveys to him. Thus he is in possession *under* and not *adverse* to the trustee. There is no ouster of the trustee; she puts him in. He takes the legal title, subject to the trust, the declaration of which is in his chain of title, and therefore his possession can not become adverse to the *cestui que trustent.* In this respect the case is distingushed from the case of *King v. Rhew, supra,* and other cases cited therein. While neither the plaintiff Madora nor the children can convey the *equitable estate* until the death of Madora and thereby prevent the execution of the trust created by the will, we can see no reason why the naked legal

title held by Madora may not pass by her deed. It is said however that the sale by the defendant under the power contained in the mortgage was void for that he had not the power. It will be observed that in his deed to Wilson Gay, Jr., he recites that Wells & Bailey had assigned and conveyed to him all of their right, title and interest in the land. If this language did not convey the land with the power to sell it certainly was operative to convey the title to the land which Wells had and is thus distinguished from *Williams v. Teachey,* 85 N. C., 402. If he had the title and his attempted sale be invalid he was in possession as mortgagee subject to the trust impressed upon the legal title by the will and in this point of view his possession was not adverse to the owners of the equitable estate. There is another view of the case which would lead to the same result. Madora had the legal title in trust for herself and her children. Upon her death she could no longer keep the land for "the benefit of herself and her children" and it would seem that, as the purpose of the trust had been accomplished the beneficial owners would become entitled to call for the legal title and to partition. Her share would pass to her heirs at law, but as she had by her mortgage deed conveyed her entire interest, her mortgagee becomes entitled to her share or interest—became in a certain sense a tenant in common with her children, of the equitable interest, in which case the statute would not begin to run from her death. We are of the opinion that the plaintiffs are entitled to recover the possession of the land to the end that the trust declared in the will of William Jane Bryant may be executed. In no other way can we give effect to her intention as expressed in her will.

There must be a

New trial.