CHERRY v. POWER COMPANY.

(Filed October 23, 1906).

*Trusts and Trustees—Equitable Separate Estate—Restraint Upon Alienation—Execution of Power—Statute of Uses— Color of Title—Statute of Limitations—Disabilities of Married Women.*

1. Where land was conveyed to a trustee upon the following trusts: That during the joint lives of the husband and wife the trustee should permit the wife to remain in possession and occupy the rents and profits for her sole use, but so that she should not sell, transfer, mortgage or in anywise change the same without the consent of the trustee; and should she survive her husband, then the trustee should convey the land to her; but should she die in the lifetime of her husband, leaving any children surviving, then the trustee should hold the land to the sole use of, and convey the same to, such children: *Held*, the wife had an equitable estate for the joint life of her husband and herself and a contingent remainder in fee dependent upon her predeceasing her husband.

2. The provision placing a restraint upon her right of alienation without the consent of her trustee, applies to her power to sell, transfer, etc.,

her interest or estate in the property, and a deed in fee-simple executed by the husband and wife (the husband being the substituted trustee) was a valid execution of the power to the extent of conveying to the grantee all the right, title and interest of the wife, and his possession thereunder to the day of her death was rightful.

3. Upon the death of the wife, during the coverture, leaving children surviving, her interest ceased and it became the duty of the trustee to convey the land to the children; and as the purpose of the trust was fully accomplished, by operation of the statute of uses the use becomes executed and the legal title vested in the children and the statute of limitations began to run from the death of their mother.

4. As the deed from the husband and wife professed to convey the fee, it was good as color of title from the death of the wife, and the children, unless under disabilities, were barred at the end of seven years from that time.

5. In an action of ejectment, the *feme* plaintiffs are not barred by adverse possession under color of title under the provisions of the Act of 1899, ch. 778, where the action was begun 10 February, 1906, as they had seven years from 13 February, 1899, to sue.

ACTION by L. G. Cherry and others against the Cape Fear Power Company and others, heard by *Judge M. H. Justice,* at the August Term, 1906, of the Superior Court of CHATHAM.

This action was brought by the plaintiffs for the recovery of the real estate described in the complaint. A jury trial having been duly waived, his Honor found the following facts:

That this action was begun on 10 February, 1906; that Margaret A. Moore and her intended husband, J. A. Harman, duly executed a marriage settlement and deed of trust to Joel Hines on 15 December, 1855, conveying, among other property, the land in controversy upon the following trusts, to-wit: "To have and to hold her distributive share of said land unto him, the said Joel Hines, his heirs, executors, administrators and assigns, upon the trusts, nevertheless, and to and for the uses, intents and purposes hereinafter set forth and expressed, viz.: That during the joint lives of the said James

A. Harman and Margaret A. Moore, the said Joel Hines shall suffer and permit the said Margaret A. Moore, notwithstanding her coverture, to remain in possession and occupy the rents and profits of the said tract of land and negro slaves for her sole and separate use; but so that the said Margaret A. shall not sell, transfer, mortgage, or in anywise change the same without the consent of the said Joel Hines, and should the said Margaret A. Moore survive the said James A. Harman, then and in that event the said Joel Hines, his heirs, etc., shall transfer and convey the said tract of land and negro slaves and their increase unto the said Margaret A. Moore; but should the said Margaret A. Moore die in the lifetime of the said James A. Harman, leaving any child or children surviving, her by the said James A. Harman, then and in that event the said Joel Hines, his heirs, executors, or administrators, shall hold the said tract of land and negro slaves, and their increase, to the sole use and benefit of such child or children, and convey the same to them at any time if they or any of them should survive the said Margaret A. Moore; but should there be no issue from the said Margaret A. Moore and James A. Harman, and the said Harman should survive Margaret A. Moore, he is to have the use and profits of one-half of the said negroes during his lifetime, but not the land." There are some ulterior, contingent limitations not necessary to be noted in the decision of this appeal.

That shortly thereafter Margaret A. Moore and J. A. Harman were duly married and lived together as man and wife until the death of Margaret, on 25 June, 1885. That by decree of the Superior Court of Equity of New Hanover County, in an action duly instituted in said Court, Joel Hines was permitted to resign as trustee, and Oliver P. Meares was thereupon duly appointed trustee in his stead, and duly accepted the said trust. That out of funds arising from sale of some of the property conveyed in deed of trust

to Joel Hines, the real estate described in the complaint was purchased and deed made conveying the same upon the terms and trusts declared in said marriage settlement. That subsequently, in 1859, by a decree made in the Court of Equity of New Hanover, duly instituted and pending, Oliver P. Meares was permitted to resign the trust, and J. A. Harman was duly appointed trustee, and accepted the same; and pursuant to said decree the said Oliver P. Meares, on 27 January, 1859, executed and delivered to J. A. Harman a deed conveying, among other property, the land described in the complaint, to be by him held upon the same trusts as declared in the marriage settlement. That on 16 May, 1868, J. A. Harman and Margaret A. Harman executed and delivered to H. H. Prince a deed in fee-simple for said land. That H. H. Prince entered upon said land and took possession thereof, and subsequently conveyed it to J. M. Heck, and the defendants acquired the title thereto by mesne conveyances, the said deeds conveying the land in fee with full covenants of warranty, and the several successive owners entered into open and actual possession thereof and have held and maintained such possession continuously under their deeds since said 16 May, 1868. That Margaret A. Harman died on 25 June, 1885, and James A. Harman died on 2 May, 1903. That Margaret A. Harman died leaving surviving her the following children, to-wit: John Edgar, born 6th day of November, 1856; Mary P. Cherry, wife of L. G. Cherry, born 12th day of August, 1858, and was married 27th day of December, 1877; Harriet Irene Howard, wife of M. E. Howard, born 10th day of March, 1860, married .... day of ...., 1888; Viola Braddy, born 27th day of December, 1869, and was married in September, 1889; V. C. Wren, wife of J. L. Wren, was born 13th day of November, 1863, and was married after she became 21 years of age; that Clarence H. Harman was born 24th day of August, 1866; that George L. Harman was born on the 31st day of October, 1871; that

Mrs. Mary P. Cherry, Mrs. Harriet Irene Howard, Mrs. V. C. Wren, and Mrs. Viola Braddy have remained continuously, since their marriage, *femes covert*.

The Court, upon the foregoing facts, concluded as a matter of law that the plaintiffs Mary P. Cherry and Viola Braddy are entitled to recover one-seventh each of the land, and to be let into possession of said land with the defendants; that the plaintiffs Harriet Irene Howard, V. C. Wren, George L. Harman and Clarence H. Harman are not entitled to recover of the defendants any part of said land, but that any title they may have had is vested in the defendants.

To so much of said judgment as declares and adjudges that Mary P. Cherry and Viola Braddy are entitled to one-seventh each of said land and to be entitled to be put in possession thereof, and the writ therefor, the defendants except and assign the same as error. The plaintiffs Harriet Irene Howard, V. C. Wren, George L. Harman and Clarence H. Harman except to said judgment. Both parties appealed to the Supreme Court.

*H. A. London & Son* for the plaintiffs.
*Manning & Foushee* and *Womack, Hayes & Bynum* for the defendants.

CONNOR, J., after stating the case: Eliminating so .much of the history of the title to the land in controversy as precedes the execution of the deed by Judge Meares to J. A. Harman, trustee, the case comes to this: The *locus in quo* was conveyed to Harman to hold in trust for his wife, Margaret A., for her sole and separate use for the joint lives of her husband and herself, and if she survived her husband, then to her in fee. But if she should die while under coverture, leaving children surviving, then to such children in fee. Other contingent estates are provided for, but as the first limitation has been met, and the fee vested, it is unnecessary

to set them out. Thus, as we·construe the deed, Mrs. Harman had an equitable estate for the joint life of her husband and herself and a contingent remainder in fee dependent upon her surviving him, with remainder over to her children dependent upon her predeceasing her husband. The further provision placing a restraint upon her right of alienation, without the consent of her trustee, applies to her power to sell, transfer, etc., her interest or estate in the property. There is nothing on the face of the deed indicating an intention to permit her to dispose of a larger estate than that vested in her. In that respect the deed differs from that in *Cameron v. Hicks,* 141 N. C., 21, wherein the power to appoint was "in fee or otherwise," and *Kirkman v. Wadsworth,* 137 N. C., 453, where the power was· to appoint "such estates as the *feme covert* might limit." The draughtsman evidently thought that Mrs. Harman, unless restrained by the deed, would have the power to dispose of her equitable separate estate as a *feme sole,* as was the English doctrine and once so held by us, and, for her protection, placed restraint upon her power by prescribing that she could do so only with the consent of her trustee. The substitution of her husband as trustee was permissible and valid. *Kirkman v. Wadsworth, supra.*

It is not material to inquire whether the deed from Mr. and Mrs. Harman refers to the power or not. If necessary that it should have done so, we think that there is sufficient evidence upon the face of the deed to show that they were pursuing the power. It is, however, well settled that the deed is a valid execution of the power to the extent of conveying her interests. The question is fully discussed and the authorities cited by *Mr. Justice Brown* in *Kirkman v. Wadsworth, supra.*

Prince, the grantee, in the deed of 16 May, 1868, acquired all of the right, title and interest of Mrs. Harman, and his possession under the deed to the day of her death,. 25 June,·

1885, was rightful. In this respect the case is distinguished from *King v. Rhew,* 108 N. C., 696; *Kirkman v. Holland,* 139 N. C., 185, and *Cameron v. Hicks, supra.* In neither of these cases did the trustee join in the deed, and no title passed as against him by the deeds executed by the *cestui que trustent.* For this reason the entry by the grantee was an ouster of the trustee and put him to his action; the statute thereby began to run against him, with the result that by lapse of time his right of entry was barred, and the right of his *cestui que trustent* fared the same fate.

Here the entry was rightful, and the possession continued to be so until the death of Mrs. Harman, 25 June, 1885. Upon the happening of that event her interest ceased, and it became the duty of the trustee to convey the land to her children, the present plaintiffs. As the purpose of the trust was fully accomplished, the necessity and reason for keeping the legal and equitable estates separate no longer existed, and, by operation of the statute of uses, aptly called "parliamentary magic," the use becomes executed and the legal estate vested in the plaintiffs. *McKenzie v. Sumner,* 114 N. C., 425; *Perkins v. Brinkley,* 133 N. C., 154.

When an estate is given to a trustee for a special purpose creating a special trust, as for the sole and separate use of a *feme covert* or to preserve contingent remainders, the legal title vests in him so long as the execution of the trust requires it, and no longer. *Battle v. Petway,* 27 N. C., 576; *Cameron v. Hicks, supra; Steacy v. Rice,* 67 Am. Dec., 447. The plaintiffs' right of entry, therefore, accrued upon the death of their mother, and the statute began to run from that time. As the deed from Mr. and Mrs. Harman professed to convey the fee, it was good as color of title from that time, and the plaintiffs, unless under disabilities, were barred at the end of seven years, or on 25 June, 1892. His Honor found that two of the plaintiffs were at that time and, until the beginning of this action, continued under disabilities. As to the others, the statute is a bar.

Several interesting questions were discussed in the briefs and the oral arguments which, in view of the construction which we have put on the marriage settlement, do not arise. The *feme* plaintiffs are not within the provisions of the Act of 1899, ch. 78. They had seven years from 13 February, 1899, or until 13 February, 1906, to sue. The action was begun 10 February, 1906.

We concur with his Honor in both appeals. Let it be certified that there is

No Error.