IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-613

Filed: 7 April 2020

Pasquotank County, No. 18-CVS-12

KAREN BAUMAN, Plaintiff,

v.

PASQUOTANK COUNTY ABC BOARD, Defendant.

Appeal by Plaintiff from order entered 1 March 2019 by Judge Marvin K. Blount in Pasquotank County Superior Court. Heard in the Court of Appeals 4 February 2020.

*Gregory E. Wills for Plaintiff-Appellant.*

*Roberson Haworth & Reese, PLLC, by Alan B. Powell, Christopher C. Finan, and Andrew D. Irby, for Defendant-Appellee.*

INMAN, Judge.

Plaintiff Karen Bauman ("Plaintiff") appeals from an order granting judgment on the pleadings in favor of Defendant Pasquotank County ABC Board (the "Board"). After careful review, we affirm the trial court's order.

## I. **FACTUAL AND PROCEDURAL HISTORY**

The record below discloses the following:

Plaintiff's grandmother, Margaret Fletcher, owned considerable acreage in and around Elizabeth City, North Carolina. Ms. Fletcher passed away in 1990, and her

will provided that her real property holdings be placed in a testamentary trust for the benefit of her son—Plaintiff's father—Charles Fletcher. The will provided that the trust remainder would pass to Plaintiff at her father's death. The will named as trustee Emma Norris ("Emma"), who was not a family member at the time of Ms. Fletcher's death, and delegated to Emma full and sole discretion to sell the corpus for the benefit of Mr. Fletcher and to terminate the trust at any time.

The trustee-beneficiary relationship between Emma and Mr. Fletcher eventually took on a more romantic character and, in 1997, the two were married. On the day the marriage license was issued, Emma, in her capacity as trustee, conveyed the majority of the real property in the trust to Mr. Fletcher individually by general warranty deed. Nine days later, Emma arranged for Mr. Fletcher to execute a deed conveying that same property to her in her individual capacity.

The deeds did not transfer the entirety of the trust's real estate holdings because they failed to describe a .66 acre tract in Elizabeth City (the "Disputed Tract"). Thus, while the vast majority of the trust's corpus now belonged to Emma individually, the Disputed Tract remained within the trust.

Emma executed a deed purporting to transfer the Disputed Tract to the Board in exchange for $165,000 in March of 2000. The deed lists the grantor as Emma "and husband, [Mr.] Fletcher[,]" and both signed the deed individually without reference

to the trust. Emma deposited the proceeds from the sale in a personal account under her name only. The Board built and operated an ABC store on the property.

In 2015, Mr. Fletcher and Plaintiff filed suit against Emma for undue influence, fraud, and breach of fiduciary duty in connection with her transfers of the real property out of the trust. Emma and Mr. Fletcher died while the suit was pending, and their respective estates were substituted in as parties. Those claims were ultimately resolved by summary judgment entered in favor of Plaintiff and her father's estate. In 2017, Plaintiff and the new trustee learned that the Disputed Tract had never been conveyed out of the trust and, on 8 January 2018, Plaintiff filed a quiet title action against the Board.

The Board responded to Plaintiff's complaint by asserting counterclaims for adverse possession under color of title and reformation, among others. The Board then moved for judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure, while Plaintiff moved for partial summary judgment on all pertinent claims discussed above. Both motions came on for hearing before the trial court on 20 December 2018.

The trial court requested that counsel first argue the Board's motion for judgment on the pleadings. Following those arguments, the trial court took the matter under advisement and concluded the hearing without proceeding to argument on Plaintiff's motion for summary judgment. And, although it had received

evidentiary exhibits pertinent to Plaintiff's motion, the trial court announced that it would not consider those exhibits in deciding the Board's motion. The trial court ultimately entered judgment on the pleadings in favor of the Board. Plaintiff now appeals.

## II. <u>ANALYSIS</u>

### A. *Standard of Review*

Judgment on the pleadings is appropriate "where the pleadings fail to reveal any material issue of fact with only questions of law remaining." *Fisher v. Town of Nags Head*, 220 N.C. App. 478, 480, 725 S.E.2d 99, 102 (2012). Granting judgment on the pleadings "is not favored by law and the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmovant." *Carpenter v. Carpenter*, 189 N.C. App. 755, 762, 659 S.E.2d 762, 767 (2008). "This Court reviews *de novo* a trial court's ruling on motions for judgment on the pleadings. Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Reese v. Mecklenburg Cty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009) (citations omitted).

### B. *Adverse Possession Against Trust Beneficiaries*

Plaintiff concedes on appeal that the Board "has possessed the land in dispute under a claim of right for 17 years before her lawsuit was filed and that the . . . deed to the [Board] adequately described the property." She thus limits her argument to

- 4 -

the "sole contention . . . that th[e] shortened period of adverse possession . . . [of] seven years under 'color of title' cannot be applied [to] the facts presented in this record." More specifically, Plaintiff asserts that the seven-year term for adverse possession under color of title cannot run against the beneficiaries of a trust when the trustee is responsible for creating color of title in the adverse possessor. She relies on our Supreme Court's decisions in *King v. Rhew*, 108 N.C. 696, 13 S.E. 174 (1891), *Deans v. Gay*, 132 N.C. 227, 43 S.E. 643 (1903), and *Cherry v. Power Co.*, 142 N.C. 404, 55 S.E. 287 (1906).

*King*, like this case, involved the purported transfer of real property held in a testamentary trust. 108 N.C. at 697, 13 S.E. at 174. There, the beneficiary of the trust and her husband—but not the trustee—executed a deed transferring the real property to a third party, and the purported grantee took possession of the land. *Id.* at 698, 13 S.E. at 174. When the beneficiary died, and more than seven years after the grantee took possession, several heirs with contingent remainder interests in the trust sued to recover the real property. *Id.* The Supreme Court held that the seven-year period for adverse possession under color of title had run against the heirs because the trustee of the trust could have brought a legal challenge as the true owner of the property against the grantee on behalf of the trust's beneficiaries. *Id.* at 699, 13 S.E. at 175. In other words, the Supreme Court followed the default rule that if the seven-year period for adverse possession under color of title has run against the

trustee, then it has also run against the trust's beneficiaries. *Id.*[1] The Supreme Court, in applying the rule, distinguished a decision from Tennessee, *Parker v. Hall*, 39 Tenn. 641 (1859), that reached a different result under a different set of facts:

> [*Parker*] only decides that the [beneficiaries] are not barred where the trustee estops himself from suing by selling the property, and thus "uniting with the purchaser in a breach of the trust." The wrong, says the court, is to the [beneficiaries] and not to the trustee, and he "could not sue or represent them." It has never been insisted that the bar is effective against the [beneficiaries] except in cases where the trustee could have sued, as in this case, and failed to do so.

*King*, 108 N.C. at 704, 13 S.E. at 176-77.

The Supreme Court again addressed this general rule in *Deans*, when a testator's will established a testamentary trust for the benefit of her daughter and grandchildren and naming her daughter as trustee. 132 N.C. at 228, 43 S.E. at 644. Per the trust documents, the real property was to be held in the trust "for the benefit of [the daughter] and her children forever." *Id.* The daughter and her husband executed a mortgage deed encumbering the land held by the trust to a third party, who then conveyed that mortgage interest to the defendant. *Id.* The defendant later foreclosed on the property and ultimately purchased it. *Id.* 25 years later, the daughter and her children filed suit against the defendant seeking his removal. *Id.*

---

[1] *King* was not the first decision from our Supreme Court adopting this rule. *See, e.g., Clayton v. Cagle*, 97 N.C. 300, 303, 1 S.E. 523, 525 (1887) ("The interests of the [beneficiaries] are, as to strangers to the deed, under the protection of the trustee, and share the fate that befalls the legal estate by his inaction or indifference." (citations omitted)).

In resolving the case, the Supreme Court distinguished *King* and declined to apply the general rule on adverse possession found therein. *Id.* at 231, 43 S.E. at 645. The Supreme Court held that although a mortgage interest was validly conveyed by the trustee, that mortgage interest did not include a power of sale. *Id.* at 232, 43 S.E. at 645. And, seizing on the fact that the daughter had executed the mortgage deed as trustee, the Court held that the defendant's possession could not satisfy an adverse possession claim because the defendant took "possession under, and not adverse to the trustee." *Id.* at 231, 43 S.E. at 645. The Court continued:

> There is no ouster of the trustee; she puts him in. He takes the legal title subject to the trust, the declaration of which is in his chain of title, and therefore his possession cannot become adverse to the [beneficiaries]. In this respect the case is distinguished from the case of *King v. Rhew*[.]

*Id.*

The final case cited by Plaintiff, *Cherry*, involved a tract of real property held in trust for a woman with her husband acting as trustee. 142 N.C. at 408, 55 S.E. at 288. The wife possessed "an equitable estate for the joint life of her husband and herself and a contingent remainder in fee dependent upon her surviving him, with remainder over to her children dependent upon her predeceasing her husband." *Id.* at 409, 55 S.E. at 288. The trust document provided that the wife could transfer her interest only upon the consent of the trustee, but in any event could not "dispose of a larger estate than that vested in her." *Id.* The husband and wife ultimately

conveyed the real property in the trust to a third party in 1868, with the husband executing the deed in his capacity as trustee. *Id.* at 407, 55 S.E. at 288. The property was eventually conveyed to the defendant, who continued possession of the property. *Id.* The wife died in 1885, and the husband died in 1903. *Id.* Their children eventually brought suit in 1906 to recover the property from the defendant. *Id.*

The Supreme Court first addressed what was transferred by the deed, and held that the husband had executed the conveyance in his capacity as trustee; however, it construed the deed as only conveying the wife's interest in the property, *i.e.*, "an equitable estate for the joint life of her husband and herself and a contingent remainder in fee dependent upon her surviving him[.]" *Id.* at 409, 55 S.E. at 288. Thus, the defendant possessed the property under that equitable interest until her death and, because the trustee had agreed to the transfer of the equitable interest, there was no *adverse* possession during that time such that the rule utilized in *King* did not apply. *Id.* at 410, 55 S.E. at 289. Instead, the Supreme Court held that the period of adverse possession began when the wife predeceased her husband, as the wife's interest under the trust extinguished upon her death and the property should have devolved in fee simple to the children at that time. *Id.* In other words, because the trustee conveyed less than a fee simple interest in the property to the defendant and that conveyance was made under the terms of the trust, the defendant's

possession was not adverse until the trust was extinguished and complete title passed to the children. *Id.*

In sum, the above cases stand for the following propositions: (1) if a trustee may sue to eject an adverse possessor, the time for adverse possession under color of title runs against the trust beneficiaries, *King*, 108 N.C. at 699, 13 S.E. at 175; and (2) if the trust possesses rights short of a fee simple interest in real estate and the trustee, acting in that capacity, transfers those rights to a third party, the term of adverse possession does not begin to run until the trust is extinguished and fee simple passes to the beneficiaries. *Deans*, 132 N.C. at 231, 43 S.E. at 645; *Cherry¸* 142 N.C. at 410, 55 S.E. at 289.

## C. *Plaintiff's Appeal*

The facts of this case do not lend themselves to a neat application of *King*, *Deans*, and *Cherry* based on the close reading discussed above.

*Deans* and *Cherry* are distinctly inapposite from this case. As demonstrated by the allegations of the complaint and supporting exhibits,[2] Emma did not convey

---

[2] A trial court may consider documents attached to a complaint in ruling on a motion for judgment on the pleadings without converting it into summary judgment because "documents . . . attached to and incorporated within a complaint . . . become part of the complaint." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (citation omitted). We also note that a dispositive motion aimed at the pleadings does not become a summary judgment motion where the parties submit extraneous documents so long as it is clear from the record that those materials were not considered by the trial court in reaching its ruling. *See Estate of Belk by and through Belk v. Boise Cascade Wood Products, L.L.C.*, ___ N.C. App. ___, ___, 824 S.E.2d 180, 182-83 (2019) (noting that a motion to dismiss under Rule 12(b)(6) is not converted to a summary judgment motion if the record shows the trial court limited its consideration to the pleadings).

the Disputed Tract to the Board in her capacity as trustee. Nor did she purport to bind the trust in any way. By contrast, in *Deans* and *Cherry,* the defendants took title from trustees under the terms of the respective trusts, so that possession during the life of each trust was not adverse. Given the unique and distinguishing facts of this case, we hold that the Board took possession of the Disputed Tract adverse to, instead of under, the trust.

The basis for tolling adverse possession against trust beneficiaries announced in *Parker* and echoed in *King* does not apply to this case. Plaintiff argues that the Board had no adverse possession during the term of the trust because Emma was estopped from suing to eject the Board under the theory of estoppel by deed. *See, e.g., Crawley v. Stearns*, 194 N.C. 15, 16, 138 S.E. 403, 403 (1927) ("[A]s to his grantee the maker of a deed will not be heard to contradict it, or to deny its legal effect . . . , or to say that when the deed was made he had no title. As against his grantee he is estopped to assert any right or title in derogation of this deed."). However, estoppel by deed binds "only . . . parties and privies." *Dixieland Realty Co. v. Wysor*, 272 N.C. 172, 182, 158 S.E.2d 7, 15 (1967). Plaintiff offers no explanation of how Emma's conveyance *solely in her individual capacity* worked to estop her from challenging the conveyance *as trustee* on behalf of the trust.[3]

---

[3] We note that all trustees are empowered to bring suit "to enforce claims *of the trust*[,]" N.C. Gen. Stat. § 36C-8-811 (2019) (emphasis added), and, in light of the complaint's allegations and Plaintiff's insistence on appeal that Emma's conveyance to the Board was purely an individual act that

Further, and as pointed out by the Board, *Parker* and *King* discuss tolling the term of adverse possession against beneficiaries when the trustee breaches the trust by impermissibly exercising a power of sale and, in doing so, "unit[es] with the purchaser in a breach of the trust." *King*, 108 N.C. at 704, 13 S.E. 174 at 177 (quoting *Parker*, 39 Tenn. at 646). Here, however, Emma possessed the right as trustee to sell trust property in her sole discretion, and the judgment in the constructive fraud case against Emma as trustee did not invalidate the conveyance of the Disputed Tract to the Board.[4] Although the complaint contains a conclusory allegation that Emma and the Board "united in a breach of the . . . trust[,]" the complaint's allegations and supporting documents attached to it do not place this case within that language as used in *Parker* and *King*. *See cf.* Restatement 2d of Trusts, § 327, Comment I (1959) ("If the trustee in breach of trust transfers trust property to a third person . . . who *does not knowingly participate in the breach of trust*, and the trustee is barred by the

---

in no way bound the trust, the facts do not compel the legal conclusion that Emma was legally estopped from asserting the trust's claim to oust the Board in her capacity as trustee. *See Hendricks v. Mendenhall*, 4 N.C. 371 (1816) (holding executors' endorsement of a deed in their capacity as executors of an estate did not estop them from challenging the deed in their individual capacities as heirs); *cf. Brooks v. Arthur*, 626 F.3d 194, 201 (4th Cir. 2010) ("The rule of differing capacities is generally understood to mean that defendants in their official and individual capacities are not in privity with one another for the purposes of res judicata."). *But see Dillingham v. Gardner*, 222 N.C. 79, 80, 21 S.E.2d 898, 899 (1942) (holding a party in his individual capacity was equitably estopped from contesting a judgment against him in his capacity as sole trustee when "the plaintiff himself has acted upon the assumption that the interest of the plaintiff in the former case and the interest of the plaintiff in the instant case were identical.").

[4] The summary judgment order in that cases discusses fraud only in the context of Emma's transfers of real estate from the trust to her husband and from her husband to herself. That judgment concerned and voided only those two deeds, and Appellant acknowledges in her brief that "the pleadings and affidavits contained [in that case file] show that the issue of title ownership of the .66 acres in dispute in this case, was never litigated in that case."

Statute of Limitations or laches from maintaining a suit against the transferee, the beneficiary is also barred, . . . even though the beneficiary does not know of the breach of trust." (emphasis added)).

Given the above distinctions from *King, Deans*, and *Cherry*¸ and in light of the particular facts of this case, we hold that the trial court properly granted judgment on the pleadings in favor of the Board. The complaint and its attachments do not demonstrate facts falling within the exception to the general rule that adverse possession under color of title will run against the trust's beneficiaries. In adopting that rule, our Supreme Court believed it "so plain that it was deemed unnecessary to cite authorities, and the Court was content to leave the question on the manifest reason of the thing." *Carswell v. Creswell*, 217 N.C. 40, 46, 7 S.E.2d 58, 61 (1940) (citation and quotation marks omitted). In discussing the equity of its application, our Supreme Court declared:

> If by reason of neglect on the part of the trustees, [beneficiaries] lost the trust fund, their remedy is against the trustees, and if they are irresponsible, it is the misfortune of the [beneficiaries], growing out of the want of forethought on the part of the maker of the trust, under whom they claim.

*Id.* (citations and quotation marks omitted). In the face of these prevailing principles, the unique facts here do not plainly situate Plaintiff's claim inside the claimed exception to this rule.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, and in light of the particular facts of this case, we affirm the trial court's order granting judgment on the pleadings in favor of the Board. Because we hold the entry of judgment on the pleadings was proper and it appears from the record that the trial court did not consider evidence outside the pleadings, we do not address Plaintiff's contention that the Board's motion was converted to one for summary judgment.

AFFIRMED.

Judges BRYANT and DILLON concur.